FILED

2011 Sep-20  PM 01:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **DANIELLA YVONNE ELLIS,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| **v.** } | **Case No.:  2:10-CV-0937-RDP** |
| } | |
| **MICHAEL J. ASTRUE,** } | |
| **Commissioner of Social Security,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff Daniella Yvonne Ellis brings this action pursuant to Section 205(g) of the Social Security Act (the "Act") seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g).  Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

### I.  Proceedings Below

This action arises from Plaintiff's application for Title II Social Security disability and DIB, dated August 2, 2007, alleging disability beginning on March 2, 2007.  (Tr. 82, 89). Plaintiff's application was denied initially and upon review.  (Tr. 47).  On October 12, 2007, Plaintiff requested a hearing before an administrative law judge ("ALJ").  (Tr. 55).  Plaintiff's request was granted and a hearing was held on July 6, 2009 in Birmingham, Alabama before ALJ Edgar J. Perkerson. (Tr. 7-35, 66).

Plaintiff appeared in person at the hearing along with counsel and Maria Schulman, a vocational expert.  (Tr. 7).  In the ALJ's decision dated August 31, 2009, he determined that

Plaintiff was unable to perform past relevant work, but considering Plaintiff's age, education, work experience and residual functional capacity ("RFC"), Plaintiff had acquired work skills that were transferable to other occupations with jobs existing in significant numbers in the national economy.  (Tr. 45).  Therefore, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act and thus not eligible for Social Security DIB.  (Tr. 46).  On February 5, 2010, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1), making that decision the final decision of the Commissioner, and therefore, a proper subject of this court's review.  42 U.S.C. § 405(g).

At the time of Plaintiff's application, she was forty years of age and had acquired a college education, as well as completed nurses training.  (Tr. 20, 123).  Plaintiff has previously worked as a registered nurse ("RN") at a home health care agency, an RN Manager and Supervisor at a nursing home, an RN in a GI Lab at a hospital, a staff RN at a hospital, and a travel RN in a GI Lab through a staffing agency. (Tr. 98). As testified to by the vocational expert ("VE") during Plaintiff's hearing, her prior work as an RN is classified as medium, skilled work; her prior work as a nurse supervisor is classified as light, skilled work; and her prior work as a head nurse is classified as medium, skilled work.  (Tr. 28).  Plaintiff alleges limitations in her ability to work based on back and leg pain, arm and hand pain, tremors and weakness in her hands, and numbness and tingling in her leg, foot and toes.  (Tr. 113).

In a report dated January 29, 2004, the results of an MRI administered to Plaintiff showed an "abnormal signal in the centrum semi ovale and periventricular white matter which 'raised the question of a demyelinating process.'"  (Tr. 257).  Plaintiff was referred to Dr. Frank Thomas at Simon Williamson Clinic for consultation.  (Tr. 206).  Plaintiff presented to Dr.

Thomas on February 9, 2004, and he diagnosed Plaintiff with migraine with aura and an abnormal brain MRI with unidentified deep white matter changes. (Tr. 207-08). On February 18, 2004, Dr. Thomas followed up with Plaintiff via telephone and recommended a lumbar puncture to look for inflammatory changes compatible with Multiple Sclerosis ("MS"). (Tr. 205). Plaintiff returned for a follow up appointment on March 10, 2004, having some tingling sensations in the left side of her face, arm and leg, but no frank sensory loss. (Tr. 204). Plaintiff was diagnosed with possible MS and history of migraine with aura. (Tr. 204). On May 24, 2004, Plaintiff again returned for a follow up with Dr. Thomas and a repeat MRI scan showed no new lesions and she was stable from her prior study. (Tr. 203). Dr. Thomas noted that he would follow her clinically and have her return in six months for a repeat examination. (Tr. 203).

On January 19, 2005, Plaintiff returned to Dr. Thomas complaining of tingling in her hands, which had been stable until a week prior to her doctor's visit when she had been bitten by an unseen insect on her left hand, presumably a spider. (Tr. 200). Additionally, Plaintiff complained of lumbar difficulty and episodes of "feeling like [she was] in a trance." (Tr. 200). Although Plaintiff had previously reported mild to moderate relapsing low back pain, during this visit she reported her pain as being worse in the preceding months. (Tr. 200). Dr. Thomas diagnosed Plaintiff with a herniated lumbar disc with mild left lumbosacral radiculopathy, minimally symptomatic with no significant leg weakness or severe pain. (Tr. 201). Dr. Thomas also noted Plaintiff's episodes of altered mental status, finding no definite seizure activity. (Tr. 201). During this doctor's visit, Dr. Thomas also noted Plaintiff's abnormal brain MRI and the need for a repeat MRI study (even though she had received no definite diagnosis of MS). (Tr. 202). Plaintiff underwent an EEG on January 25, 2005 to rule out partial seizures following her

abnormal brain scan.  (Tr. 215).  The results showed a borderline EEG with a non-specific finding.  (Tr. 215).

On February 9, 2005, Plaintiff was seen by Dr. Thomas for a follow-up related to her problems with paresthesias.  (Tr. 199).  Dr. Thomas noted that Plaintiff's abnormal MRI was stable, there was no evidence to definitely confirm MS, and her spinal fluid and other ancillary tests were negative.  (Tr. 199).  Dr. Thomas further noted that Plaintiff does have lumbar disc disease, but was "doing well with conservative therapy."  (Tr. 199).  As for her left upper extremity paresthesias, Dr. Thomas noted that Plaintiff "probably has some mild carpal tunnel syndrome but right now [Plaintiff] does not wish to pursue this further."  (Tr. 199).  Plaintiff was referred to Dr. Padove for probable obstructive sleep apnea.  (Tr. 199).

In an April 27, 2005 appointment with Dr. Thomas, Plaintiff was found to be stable with no evidence to support a diagnosis of MS, but her left upper extremity paresthesias had worsened to where she had pain and numbness in her left hand.  (Tr. 198).  Plaintiff was referred for nerve conduction studies.  (Tr. 198).  In an October 19, 2005 appointment with Dr. Thomas, he noted that with regard to Plaintiff's left arm pain and paresthesias, nerve conductions were administered and no carpal tunnel or ulnar neuropathy was seen and this ailment continued to be fairly mild.  (Tr. 196).  Dr. Thomas suggested medication for relief of her left arm pain and paresthesias, as well as her migraine headaches, but Plaintiff stated she did not want to take any medication.  (Tr. 196).  As for her brain MRI abnormality, Dr. Thomas noted it had been stable previously and probably nonspecific and related to her migraine disorder.  (Tr. 196).

Plaintiff was seen at Baptist Princeton Hospital on December 13, 2005.  It was noted that a comparison of that study to her January 21, 2005 examination showed a history of paresthesias

and an abnormal MRI of the brain compatible with demyelinating process such as MS, but no change since January 2005.  (Tr. 209).   The interpreting radiologist recommended a clinical correlation.  (Tr. 209).

Plaintiff was seen at the Princeton Diagnostic Center on January 20, 2006 by Dr. Delvecchio for a herniated disk.  (Tr. 167, 365).  Dr. Delvecchio concluded that compared to her prior examination, Plaintiff's disk herniation was now larger.  (Tr. 167, 365).  On February 6, 2006 Plaintiff was seen by Dr. Fitzgerald at Princeton Baptist Medical Center, who diagnosed her with lumbar radiculopathy.  (Tr. 171).  On March 7, 2006 Plaintiff was again seen by Dr. Delvecchio who treated her with an epidural block.  (Tr. 173).  On December 14, 2006 Plaintiff was seen by Dr. Delvecchio with reports of chest pain.  (Tr. 371).  Plaintiff had no recurrent chest pain while walking on the treadmill in the doctor's office and her EKG showed no changes. (Tr. 371).  Plaintiff was also described as obese.  (Tr. 190, 207, 371).

On January 19, 2007 Plaintiff called Dr. Thomas reporting increasing problems with left arm pain and paresthesias.  (Tr. 193).  Dr. Thomas recommended a repeat MRI scan.  Dr. Thomas reviewed Plaintiff's MRI on April 10, 2007 and found no significant changes.  (Tr. 192). Plaintiff saw Dr. Thomas on May 7, 2007 for a follow up.  (Tr. 190).  Her diagnosis remained unchanged, with a history of an abnormal brain MRI, paresthesias, a history of migraine headaches, and lower back pain with chronic radiculopathy.  (Tr. 190).  Dr. Thomas stated that he was not entirely certain of her diagnosis, but he would call it possible MS.  (Tr. 190). According to the record, even with a diagnosis of MS, Plaintiff was not interested in pursuing any sort of therapy.  (Tr. 190).   Plaintiff had a comprehensive examination on October 5, 2007

which showed that she had age related cataracts and vitreous floaters, and was instructed to report any change in condition. (Tr. 388).

On March 30, 2009 Plaintiff was experiencing intermittent vertigo with gait unsteadiness and visited Dr. Thomas.  (Tr. 367).  Plaintiff's medical records from that visit continue to indicate a possibility of MS.  (Tr. 367).  Further, Plaintiff reported experiencing recurrent episodes of the sensation where she feels like she is being pulled to the left.  (Tr. 367).  Dr. Thomas referred Plaintiff to Dr. Real for further assessment.  (Tr. 368).  Dr. Thomas also noted that he would request that MRA look at her posterior circulation to be sure there is no vertebrobasilar disease.  (Tr. 368).  On June 5, 2009, Plaintiff reported taking the following medications each day: Crestor, Baby Aspirin, Diltiazem, Cardizem, Prevacid, Lyrica, Metforminhel, and Ibruprofen. (Tr. 375).

## II.  ALJ Decision

Disability under the Act is determined by a five-step test.  20 C.F.R. § 404.1520(a)(4). The steps are followed in order and if it is determined that the claimant is or is not disabled at one step, then the evaluation process will not continue.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R.  §§ 404.1520(b), 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit, whether or not a profit is realized.  20 C.F.R. § 404.1572(b).  If the ALJ finds that the claimant engages in substantial gainful activity, the claimant is not disabled under the Act regardless of how severe physical or mental impairments are and regardless of her age, education, and work experience.  Second, the ALJ must determine whether the claimant has a

medically determinable impairment that is "severe" or a combination of impairments that are "severe." 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(c), 404.1520(a)(4)(ii).  If the claimant does not have a severe medically determinable impairment or combination of impairments, the claimant is not disabled under the Act.  Third, the ALJ must determine whether the claimant's impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  If a claimant's impairments or combination of impairments meets such criteria, the claimant is disabled.  If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the last two steps of the analysis.

Before considering step four, the ALJ must determine the claimant's RFC, which is their ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. 20 C.F.R. § 404.1520(e).  In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  20 C.F.R. § 404.1520(e)(iv).  If the claimant has the RFC to do past relevant work, the claimant is not disabled under the Act. If the ALJ determines that the claimant is unable to do any past relevant work or does not have any past relevant work, the evaluation proceeds to the fifth and final step.

In the final step, the ALJ must determine whether the claimant is able to do any other work considering their RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  If the claimant is able to do other work, the claimant is not disabled.  If the claimant is not able to do other work and meets the duration requirement, the claimant is considered to be disabled.  In this final step, the burden shifts from the claimant to the ALJ to prove the existence, in

significant numbers, of jobs in the national economy that the claimant can do given their RFC, age, education, and work experience.  20 C.F.R. §§ 404.1512(g), 404.1560(c).

In the present case, the ALJ determined that Plaintiff: (1) last met the insured status requirements of the Act on September 30, 2007; (2) did not engage in substantial gainful activity during the period from her alleged onset date of disability of March 2, 2007 through her date last insured of September 30, 2007; (3) through the date last insured, had severe impairments including suspected multiple sclerosis and a herniated disc L4-L5; (4) through the date last insured, did not have an impairment or combination of impairments that met one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (Tr. 42-43).  After consideration of the record, the ALJ found that Plaintiff retains the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with limitations.  (Tr. 43).  Based on the testimony of the VE, the ALJ found that Plaintiff was unable to perform any past relevant work (20 C.F.R. § 404.1565), but that she acquired work skills from past relevant work (20 C.F.R. § 404.1568) that when taken in combination with her age, education, work experience, and RFC, were transferable to other occupations with jobs existing in significant numbers in the national economy.  (Tr. 44-45).  Therefore, the ALJ concluded that Plaintiff is not disabled as defined by the Act, and therefore not entitled to a period of disability or DIB.  (Tr. 46).

### III.  Plaintiff's Argument for Reversal

Plaintiff presents one central argument for reversing the decision of the ALJ. Plaintiff contends that the ALJ failed to consider all of her severe impairments in combination when formulating his RFC findings.  (Pl.'s Mem. 10).  Plaintiff maintains that it is obvious from the record that her doctors believe that she legitimately suffers from some disease or disorder.  (Pl.'s

8

Mem. 11). Additionally, Plaintiff asserts that the ALJ is not qualified to evaluate the medical evidence and reach a legitimate conclusion as to her level of limitation.  (Pl.'s Mem. 13). Therefore, Plaintiff maintains, at the very least, that the ALJ should have ordered a consultative evaluation with an RFC evaluation by a qualified source.  (Pl.'s Mem. 13).  Further, Plaintiff argues that in the absence of any medical source statement or physical capacities evaluation by either a consulting, treating, or reviewing physician, the ALJ's RFC determination is not supported by substantial evidence.  (Pl.'s Mem. 13).

## IV.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence."  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings

must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.  Discussion

**A.     The ALJ Did Consider All of Plaintiff's Severe Impairments in Combination When Formulating Her RFC Assessment.**

Plaintiff's main argument is that the ALJ did not consider all of her severe impairments in combination when formulating her RFC assessment. (Pl.'s Mem. 10). Plaintiff's argument fails because the ALJ specifically stated that in formulating Plaintiff's RFC, he considered all of her symptoms, and included all symptoms she had provided in the record. (Tr. 43).

The ALJ determined Plaintiff suffers from the following "severe" impairments because they cause significant limitation in her ability to perform basic work activities: multiple sclerosis by symptoms and a herniated disc L4-L5. (Tr. 42). Although Plaintiff's symptoms include headaches, paresthesias, hand pain, occasional jittery feelings, occasional leg weakness, intermittent tremors, dry mouth, and transient visual anomalies, repeated doctor visits show that these symptoms have fluctuated in frequency and intensity over time. (Tr. 42). The ALJ further determined that Plaintiff's allegations of diabetes mellitus, hypertension, gastric esophageal reflux disease ("GERD"), and obstructive sleep apnea are "nonsevere" because they have either resolved with no credible allegations of continued limitation to her activities, or the limitations they do produce are either minor or infrequent. (Tr. 42).

The Eleventh Circuit has determined that if a claimant is attempting to prove disability through his or her own subjective complaints of disabling pain, the ALJ must clearly "articulate

explicit and adequate reasons" for discrediting the claimant's allegations. "A three-part 'pain standard' applies when a claimant attempts to establish disability through her own testimony of pain . . . [which] requires (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *May v. Comm'r of Soc. Sec.*, 226 F.App'x. 955, 958 (11th Cir. 2007) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)).

Further, *Foote v. Chater* states that "[a] claimant's subjective testimony supported by medical evidence that satisfies this pain standard is itself sufficient to support a finding of disability." 67 F.3d 1553, 1561 (11th Cir. 1995). However, when the record and claimant's complaints of pain are inconsistent or contradictory, the ALJ may reject claimant's testimony. *See Pritchett v. Comm'r Soc. Sec. Admin.*, 315 F.App'x. 806, 812 (11th Cir. 2009). *Foote* also requires the ALJ to "articulate explicit and adequate reasons" for discrediting a claimant's testimony of pain. 67 F.3d at 1561-62. However, "this circuit does not require an explicit finding as to credibility … the implication must be obvious to the reviewing court." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)).

In the present case the ALJ determined that Plaintiff's impairments cause discomfort, but do not evidence a disabling condition. (Tr. 44). The regulatory definition of disability is whether a claimant is unable to engage in substantial gainful activity due to a physical or mental medically determinative impairment or combination of impairments which have lasted or are expected to last 12 months or longer. The ALJ determined that with regard to Plaintiff's alleged

chronic pain, although she may have some daily pain or discomfort, she acknowledges that this pain varies and at times she is pain free. (Tr. 44). The ALJ's RFC determination suggests to the court that the ALJ did fully consider Plaintiff's medical condition as a whole. For example, he considered Plaintiff's statements made during the hearing, her medical consultations with Dr. Thomas, her neurologist, Dr. Shazargan, a neurosurgeon, and Dr. Dalveccio, her principal treating physician. (Tr. 14-15, 20). The ALJ's consideration of the evidence in the record was not arbitrary, and, as explained even more fully below, the ALJ's findings are supported by substantial evidence.

**B.     The ALJ's RFC Assessment Is Supported by Substantial Evidence**

The ALJ's RFC assessment of Plaintiff is supported by substantial evidence. "Substantial evidence is something more than a scintilla, but less than a preponderance." *Dyer,* 395 F.3d at 1210 (citing *Hale v. Bowen*, F.2d 1007, 1011 (11th Cir. 1987)). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer,* 395 F.3d at 1210. (citing *Phillips v. Barnhart* 357 F.3d 1232, 1240 (11th Cir. 2004)). Plaintiff bears the ultimate burden of proving disability. *See* 20 C.F.R. § 416.912(d). Over and again, the Eleventh Circuit has re-affirmed this well-established principle in *Ellison v. Barnhart* by stating that "the claimant bears the burden of proving that [s]he is disabled, and, consequently, [s]he is responsible for producing evidence in support of h[er] claim." *E.g., Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *see also* 42 U.S.C. § 423(d)(5)(A). ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require").

12

The court has already noted this Circuit's pain standard. When a claimant alleges disability through subjective complaints of pain or other symptoms, the pain standard requires: (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Even if a claimant shows an impairment that could reasonably be expected to produce the symptoms alleged, the intensity and persistence of the symptoms, such as pain, will then be evaluated. *See* 20 C.F.R. § 404.1529(c)(2) & (3).

"[I]f an impairment can be controlled by treatment or medication, it cannot be considered a disability." *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993). Plaintiff reported problems with paresthesias, but said it had improved after Dr. Thomas prescribed Lyrica. (Tr. 179, 403). Plaintiff also reported that her back pain improved with physical therapy. (Tr. 179). She also reported tingling and occasional swelling in her left hand, but could not describe any real trigger for these symptoms. (Tr. 179). Furthermore, Plaintiff's symptoms fluctuate in frequency and intensity over time, and she herself acknowledged that her pain varies, and at time she has apparently been pain free. (Tr. 42, 44, 190-240, 394-418).

The record shows that Plaintiff has had suspected MS since 2004. (Tr. 207-08). An MRI of Plaintiff's brain revealed stable multi-focal white matter disease suggestive of MS. (Tr. 207-08). In 2007, Dr. Thomas examined Plaintiff and found no acute distress, normal gait, normal power diffusely, and no Tinel's at her wrist. (Tr. 179). Dr. Thomas was uncertain that Plaintiff had MS, and did not diagnose such. (Tr. 190). In a follow up appointment with Dr. Thomas in

13

2008, he still suspected that Plaintiff could have MS, but then stated that her diabetes and migraines could cause abnormalities of a vascular nature. (Tr. 403). Additionally, Dr. Thomas stated that Plaintiff's paresthesia was rapidly resolved with her prescription for Lyrica. (Tr. 403).

When considering Plaintiff's impairments, the ALJ also considered medications or other measures used to relieve her pain. *See* 20 C.F.R. § 404.1529(c)(3)(iv); *see also Stout*, 988 F.2d at 855. Since Plaintiff's paresthesias is relieved by Lyrica, it cannot be considered disabling, and the ALJ was correct in noting her allegations of limitation in daily living, but determining that this does not evidence a disabling condition. (Tr. 44). *See* 20 C.F.R. § 404.1529(c)(3)(iv); *see also Stout*, 988 F.2d at 855.

The ALJ determined that Plaintiff was unable to perform past relevant work, but considering her age, education, work experience, and RFC, she had acquired work skills from past relevant work that were transferable to other available occupations. (Tr. 45). The VE testified that a person with Plaintiff's RFC could not perform her past relevant work, but could perform other work including that of a cardiac monitor technician, infection control nurse, and college nurse. (Tr. 31-32). The ALJ relied upon the VE's testimony and opinion in order to determine that Plaintiff had transferable work skills for jobs which are available in the national economy. (Tr. 45-46). Those findings are amply supported by the record.

## C.   The ALJ Is Not Only Qualified But Has the Responsibility to Evaluate the Medical Evidence

Plaintiff argues that in a claim as complicated as the present one, the ALJ is not qualified to evaluate the medical evidence and reach a legitimate conclusion. (Pl.'s Mem. 13). Plaintiff contends that the ALJ should have ordered a consultative evaluation with an RFC evaluation by a qualified source. (Pl.'s Mem. 13). Both assertions are incorrect because the ALJ is qualified to

14

evaluate the medical evidence and reach a conclusion, and "the regulations normally require a consultative evaluation only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other sources." *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) (quoting 20 C.F.R. § 404.1519a(b)).   Additionally, because Plaintiff bears the burden of proving she is disabled, she is responsible for producing evidence to support her claim. *Ellison*, 355 F.3d at 1276.   In cases such as this, the ALJ does not bear the burden of inquiring outside of the record for evidence to support a claimant's claim of disability. Furthermore, the ALJ is not required to order a consultative examination so long as the record contains sufficient evidence to allow for informed fact finding and decision. *See Doughty,* 245 F.3d at 1281.   The burden to present a sufficient record falls squarely on the claimant. *Ellison*, 355 F.3d at 1276.

Plaintiff cites *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15 (1st Cir. 1996) and argues that "while the case at bar contained the [p]laintiff's medical treatment history it lacked any physical capacity evaluation by a physician." (Pl.'s Mem. 13).   In *Manso-Pizarro*, the court held that the ALJ made his RFC evaluation without the physical capacity evaluation by a physician, and stated that an ALJ is allowed to make some judgments as to a claimant's RFC when there is so little physical impairment that the effect would be apparent to a lay person. *Id.* at 17.   In asserting that the ALJ must obtain an RFC evaluation by a physician or expert, Plaintiff is asking the court to heighten the standard required by the Social Security Act. The Act requires only that the Commissioner's finding be supported by substantial evidence. *See* 42 U.S.C. § 405(g). *See also Doughty*, 245 F.3d at 1281; *Ellison*, 355 F.3d at 1276.

In determining a claimant's RFC, the ALJ may consider statements from medical sources regarding what the claimant can still do despite her impairments, but they are not determinative.[1] *See* SSR 96-5p; 20 C.F.R. §§ 404.1513(b), 404.1527, 404.1545.  Plaintiff's assertion that the ALJ is not qualified and should have consulted experts outside of the record is not a valid argument. The ALJ gave great weight to the medical opinions of Plaintiff's treating physicians, and the reports derived from medical testing. (Tr. 44).   Additionally, the ALJ's RFC determination is supported by Plaintiff's medical records, her subjective statements, and the ALJ's review of the record as a whole.  (Tr. 44).  The ALJ was not required to adopt wholesale Plaintiff's treating physicians' own determinations as to her ability to work if substantial evidence in the record supports the ALJ's contrary RFC finding.  *Martha Green v. Commissioner of Social Security*, 223 Fed.Appx. 915, 2007 WL 1265988 (11th Cir. May 2, 2007).   For the reasons discussed above, the ALJ's RFC assessment of Plaintiff was supported by substantial evidence.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.   The Commissioner's decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

---

[1]As the Commissioner notes, while the ALJ may adopt a medical source statement (MSS) in determining Plaintiff's RFC, it is not required to do so because an MSS and RFC are not the same thing.  (Doc. # 9 at p. 13). *See* SSR 96-5p, 1996 WL 374183, at *5 (S.S.A.) (1996) ("Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the RFC assessment.").  Inasmuch as the ALJ has the *discretion* to adopt opinions expressed in an MSS when determining RFC, it follows that an MSS is not strictly required in order to determine RFC.

**DONE** and **ORDERED** this _____20th_____ day of September, 2011

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE